1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7    ROGELIO MAY RUIZ,

Case No. 3:17-cv-00338 CRB (PR)

8                          Petitioner,

**ORDER GRANTING MOTION TO DISMISS PETITION FOR A WRIT OF HABEAS CORPUS**

9           v.

10    DAVID BAUGHMAN, Warden,

11                          Respondent.

12

13    **I.    INTRODUCTION**

14            Rogelio May Ruiz seeks federal habeas relief from his state convictions. (First Am.

15    Pet.) Respondent moves to dismiss the petition for such relief as untimely and

16    unexhausted. (Mot. Dismiss.) Because the Court agrees that the petition is untimely, the

17    Motion to Dismiss is GRANTED.

18

19    **II.   BACKGROUND**

20            In November 2006, Petitioner pleaded guilty to four counts of lewd or lascivious

21    acts on a child by force, and one count of oral copulation by use of force or injury in the

22    Santa Clara County Superior Court. (First Am. Pet. Ex. A); Cal. Penal Code § 288(b)(1);

23    Cal Penal Code § 288a(c)(2). On January 29, 2007, Petitioner received a sentence of forty

24    years imprisonment. (First Am. Pet. Ex. D at 26, 28.) The California Court of Appeal

25    affirmed the conviction on June 28, 2007. (First Am. Pet. Ex. G.) Petitioner did not seek

26    review in the California Supreme Court. (First Am. Pet.)

27            Between 2007 and 2016, Petitioner filed four habeas petitions pro se with the Santa

28    Clara County Superior Court, in which he challenged the conditions of his confinement,

1   claimed he had the ineffective assistance of his trial counsel, and claimed he suffered cruel

2   and unusual punishment. (First Am. Pet. Ex. H, J1, J2, L1, L2, N.) All four petitions were

3   denied. (First Am. Pet. Ex. I, K, M, O.) Between May 30, 2014, and August 12, 2015,

4   Petitioner filed five state habeas petitions pro se with the California Supreme Court, in

5   which Petitioner raised claims concerning the conditions of his confinement. (First Am.

6   Pet. at 4.) All five petitions were denied. (Id.) This federal habeas petition was filed on

7   December 23, 2016. (Pet.)

8

9   **III.    DISCUSSION**

10  **A.  Statute of Limitations**

11       The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a

12  statute of limitation on petitions for a writ of habeas corpus filed by state prisoners. 28

13  U.S.C. § 2244(d)(1). Under AEDPA, petitions filed by prisoners challenging non-capital

14  state convictions or sentences must be filed within one year of the date on which: (A) The

15  judgment became final after the conclusion of direct review or the time passed for seeking

16  direct review; (B) an impediment to filing an application created by unconstitutional state

17  action was removed, if such action prevented petitioner from filing; (C) the constitutional

18  right asserted was recognized by the Supreme Court, if the right was newly recognized by

19  the Supreme Court and made retroactive to cases on collateral review; or (D) the factual

20  predicate of the claim could have been discovered through the exercise of due diligence.

21  Id.

22  **B.  Timeliness of the Petition**

23       Here, because Petitioner did not file a petition for review in the California Supreme

24  Court after the California Court of Appeal affirmed the conviction on June 28, 2007, his

25  process of direct review came to an end forty days later, on August 7, 2007. (First Am.

26  Pet. Ex. G); see Miranda v. Castro, 292 F.3d 1063, 1065 (9th Cir. 2002) (explaining that

27  the AEDPA limitations period begins to run from expiration of the time for seeking direct

28  review). Petitioner therefore had until August 8, 2008, to file a federal habeas petition

United States District Court
Northern District of California

2

1   within the one-year limitation period.  See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th

2   Cir. 2001) (calculating AEDPA's one-year limitation period according to Federal Rule of

3   Civil Procedure 6(a)); (First Am. Pet. Ex. G).  However, AEDPA's one-year limitation

4   period is subject to statutory tolling under § 2244(d)(2) for the "time during which a

5   properly filed application for state post-conviction or other collateral review with respect

6   to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Here, Petitioner

7   filed his first state habeas petition in the Santa Clara County Superior Court on August 15,

8   2007, which was denied on September 26, 2007.  (First Am. Pet. Ex. H, I.)  Because his

9   petition was properly filed within the one-year limitations period, the limitations period

10  was tolled by forty-two days until September 18, 2008.  (See First Am. Pet. Ex. H); 28

11  U.S.C. § 2244(d)(2).  Petitioner did not file his second state habeas petition until October

12  16, 2014, after the limitations period expired on September 18, 2008.  (First Am. Pet. Ex.

13  J1.)  His second petition for a writ of habeas corpus to the superior court did not revive the

14  expired limitations period because AEDPA "does not permit the reinitiation of the

15  limitations period that has ended before the state petition was filed."  See Ferguson v.

16  Palmateer, 321 F.3d 820, 823 (9th Cir. 2003).  Therefore, Petitioner is not entitled to

17  further statutory tolling.

18        Petitioner's federal habeas petition was not filed until December 23, 2016, which is

19  well after the September 18, 2008, deadline.  (Pet.)  Thus, the petition is untimely unless

20  Petitioner can show that he is entitled to equitable tolling.  See Holland v. Florida, 560

21  U.S. 631, 645 (2010) (holding that petitioners may be entitled to equitable tolling of the

22  AEDPA statute of limitations).

23  **C. Equitable Tolling**

24        To receive equitable tolling of AEDPA's one-year limitation period, a petitioner

25  must show (1) that some "extraordinary circumstance" stood in his way and prevented him

26  from filing on time, and (2) that he has been pursuing his rights diligently.  Holland, 560

27  U.S. at 649.  The diligence required for purposes of equitable tolling is "reasonable

28  diligence," rather than "maximum feasible diligence."  Id. at 653 (citation and internal

3

United States District Court
Northern District of California

1    quotation marks omitted). He also must show that the extraordinary circumstance

2    "proximately caused" his late filing. Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003).

3    This is a "very high bar" reserved for "rare cases." Yeh v. Martel, 751 F.3d 1075, 1077

4    (9th Cir. 2014). Equitable tolling determinations are highly fact-specific, and therefore

5    require a flexible, case-by-case approach. Bills v. Clark, 628 F.3d 1092, 1097–98 (9th Cir.

6    2010). If more than one "extraordinary circumstance" is alleged, a petitioner can show

7    that the circumstances together made a timely filing impossible, rather than proving that

8    each factor independently made a timely filing impossible. Ramirez v. Yates, 571 F.3d

9    993, 1000 (9th Cir. 2009).

10    Petitioner claims that he is entitled to equitable tolling for the period between

11    September 26, 2007, and December 23, 2016, because he: (1) reasonably relied on the

12    incorrect legal advice of his court-appointed trial counsel; (2) cannot speak English and

13    lacked access to Spanish-language legal materials and translators; (3) was repeatedly

14    placed in administrative segregation where he lacked access to his personal legal materials;

15    (4) suffered from mental health impairment while incarcerated; and (5) pursued his rights

16    diligently during this time period. (Opp'n Mot. Dismiss at 6.) However, these

17    circumstances do not meet the high standard to warrant equitable tolling for the period

18    between September 26, 2007, and December 23, 2016. Because Petitioner argues that

19    these factors both individually and collectively qualify as "extraordinary circumstance[s]"

20    justifying equitable tolling, the Court addresses his claims both individually and

21    collectively. (See Opp'n Mot. Dismiss at 6.)

22    **1.    Reliance on Incorrect Attorney Advice**

23    Citing Gibbs v. Legrand, 767 F.3d 879 (9th Cir. 2014), Petitioner argues that he is

24    entitled to equitable tolling because he was effectively abandoned by his trial counsel, who

25    failed to correctly inform him of filing deadlines. (Opp'n Mot. Dismiss at 8); see Gibbs,

26    767 F.3d at 889. Petitioner claims that: (1) His trial counsel misinformed him about the

27    appellate process when she advised him to file three different habeas petitions and wait

28    two years between habeas filings; and (2) he did not receive notification of the superior

4

1    court's denial of his 2007 state habeas petition until 2014 and thought that his appeal was

2    properly pending throughout that time based on the incorrect advice of his trial counsel.

3    (Pet'r Decl. ¶ 3, 5.)

4         The right to the assistance of effective counsel is derived from the right to counsel

5    for that specific proceeding. Miranda, 292 F.3d at 1068 ("[B]ecause [petitioner] had no

6    right to the assistance of his appointed appellate counsel regarding post-conviction relief, it

7    follows that he did not have the right to that attorney's 'effective' assistance, either.").

8    Further, equitable tolling is not warranted for "garden variety" claims of excusable

9    attorney neglect, such as missing a filing deadline. Holland, 560 U.S. at 651–52.

10   However, more serious instances of attorney misconduct, such as where an attorney fails to

11   communicate with the client and perform essential services, may qualify as an

12   "extraordinary circumstance" warranting equitable tolling. Id.; see also Maples v.

13   Thomas, 565 U.S. 266, 271 (2012) (holding that petitioner was abandoned by his attorneys

14   because they ceased working on petitioner's case without informing him and without

15   securing substitute counsel, and such abandonment was an extraordinary circumstance).

16   The distinction lies with whether the attorney's error "is constructively attributable to the

17   client and thus is not a circumstance beyond the litigant's control." Holland, 560 U.S. at

18   657 (Alito, J., concurring). A petitioner cannot be held constructively responsible for the

19   conduct of an attorney who has "abandoned" petitioner by ceasing to operate as his agent

     in a meaningful way. Maples, 565 U.S. at 282.

20        Petitioner's claim of attorney abandonment fails because he was not represented by

21   counsel for his post-conviction proceedings. (See First Am. Pet. Ex. H, J1, L1, N.)

22   Petitioner's trial counsel could not have abandoned him for his post-conviction petitions.

23   The Ninth Circuit held in Miranda that petitioners are not entitled to equitable tolling based

24   on incorrect legal advice from counsel regarding proceedings for which that counsel was

25   not retained, stating that the petitioner in Miranda "had no right to" the legal advice given

26   by his direct review counsel regarding petitioner's post-conviction relief. Miranda, 292

27   F.3d at 1067–68. Moreover, in cases where equitable tolling has been seriously considered

28

1    on grounds of attorney abandonment in post-conviction relief proceedings, petitioners

2    were represented by counsel in those proceedings.  See Holland, 560 U.S. at 635–36

3    (petitioner claiming attorney abandonment in post-conviction relief proceedings was

4    represented by counsel in those proceedings); Maples, 565 U.S. at 270 (same); Gibbs, 767

5    F.3d at 882–83 (same); Spitsyn, 345 F.3d at 798 (same).  Here, by contrast, Petitioner is

6    claiming that he was abandoned by an attorney for a proceeding for which the attorney was

7    not retained.  (Opp'n Mot. Dismiss at 8); see Miranda, 292 F.3d at 1067–68.

8           Further, Petitioner's failure to receive notice of the denial of his state habeas

9    petition by the superior court cannot be attributed to the conduct of his trial counsel, as

10   Petitioner filed his state habeas petition pro se.  See Gibbs, 767 F.3d at 886 (explaining

11   that a petitioner proceeding pro se is entitled to notification directly from the court

12   regarding a decision made on their post-conviction relief petition).  Notice was not the

13   responsibility of Petitioner's trial counsel, because she did not represent him in his post-

14   conviction proceedings.  Cf. id. at 886–87 (noting that because petitioner was represented

15   by counsel, counsel was the one to receive docket notifications by the court).  Petitioner

16   was the sole individual responsible for ensuring he was informed of the status of his

17   habeas petitions.

18          Even if the circumstances of Petitioner's representation did not bar him from

19   making an attorney abandonment claim, trial counsel's miscalculation of the filing

20   deadline does not amount to an "extraordinary circumstance" outside of the control of

21   Petitioner.  See Holland, 560 U.S. at 651–52 (holding that a missed deadline due to an

22   attorney's "miscalculation" does not amount to more than negligence).  Petitioner has

23   incorrectly applied the reasoning in Gibbs to the facts of this case, arguing that like in

24   Gibbs, Petitioner's attorney's conduct was extraordinary enough to constitute

25   abandonment.  (Opp'n Mot. Dismiss at 8.)  In Gibbs, petitioner's attorney—who was

26   assigned to represent petitioner in his petitions for post-conviction relief—failed to inform

27   petitioner that the Nevada Supreme Court had affirmed the denial of his state habeas

28   petition, failed to communicate with petitioner despite petitioner's numerous attempts to

6

1    communicate, and delayed in returning petitioner's legal documents after petitioner

2    terminated him as counsel. 767 F.3d at 883–84. In contrast, Petitioner's trial attorney

3    made incorrect statements about federal habeas petition deadlines, which is not enough to

4    constitute an "extraordinary circumstance." See Miranda, 292 F.3d at 1068

5    ("miscalculation of the limitations period . . . and . . . negligence in general do not

6    constitute extraordinary circumstances sufficient to warrant equitable tolling.") (quoting

7    Frye v. Hickman, 273 F.3d 1144, 1146 (9th Cir. 2001)).

8         Petitioner was not abandoned by counsel during his post-conviction proceedings

9    because he was not represented by counsel during those proceedings and therefore could

10   not have been abandoned during them. See id. at 1067–68. Regardless, miscalculation of

11   filing deadlines does not constitute an "extraordinary circumstance" outside the control of

12   Petitioner. Id. at 1068. For these reasons, Petitioner is not entitled to equitable tolling on

13   the ground of attorney abandonment.

14        **2.     Lack of Spanish-Language Legal Materials**

15        Petitioner next contends that he is entitled to equitable tolling on the ground that he

16   was denied access to legal materials in the only language he understands—Spanish—and

17   his occasional access to amateur translation services was insufficient. (Opp'n Mot.

18   Dismiss at 9; Pet'r Decl. ¶ 4.) Petitioner is not entitled to equitable tolling on this ground,

19   as he has failed to demonstrate that he was diligent in his efforts to procure Spanish-

20   language materials and has not offered substantive proof that he lacked access to Spanish-

21   language materials during large portions of his incarceration.

22        Language limitations may justify equitable tolling "if language barriers actually

23   prevent timely filing." Mendoza v. Carey, 449 F.3d 1065, 1069 (9th Cir. 2006).

24   Petitioners seeking equitable tolling on language barrier grounds must demonstrate that for

25   the duration of the AEDPA time limitation, they were unable to procure legal materials in

26   their language or translation assistance despite "diligent efforts." Id. at 1070.

27        Petitioner here offers little evidence that there were, in fact, no Spanish language

28   legal materials in the prison libraries where he was incarcerated or any bilingual

United States District Court
Northern District of California

1    individuals willing to help him with his petitions.  (See Opp'n Mot. Dismiss at 9–11.)  In

2    Mendoza, the petitioner filed forty-seven declarations (in addition to his own) from

3    Spanish-speaking inmates stating that there were no Spanish-language legal materials or

4    librarians and legal clerks who spoke Spanish at the prison.  449 F.3d at 1067–68.  Here,

5    Petitioner claims that he lacked access to Spanish-language legal materials from

6    September 2, 2008, to September 29, 2009, when he was housed at Salinas Valley State

7    Prison, and after September 29, 2009, when he was transferred to Correctional Training

8    Facility (Soledad).  (Pet'r Decl. ¶ 9(c)–(d).)  Specifically, Petitioner claims that he

9    "believe[s] Correction[al] Training Facility did not have Spanish-language law library

10   materials."  (Pet'r Decl. ¶ 9(d).)  Petitioner has offered no substantive evidence other than

11   his Declaration to support his belief that these two facilities lacked Spanish-language legal

12   materials.[1]  (See Opp'n Mot. Dismiss at 9–11.)  Petitioner's stated belief is insufficient

13   without evidence that he requested access and was denied or that in fact these facilities

14   lacked Spanish-language legal materials.  See Mendoza, 449 F.3d at 1067–68 (Petitioner

15   detailed multiple incidents where he requested access to Spanish-language legal materials

16   and was denied or discovered that such materials did not exist, in addition to forty-seven

17   declarations from other Spanish speaking inmates confirming that the facility lacked

18   Spanish-language legal materials.).  Further, it is unclear where Petitioner was held prior to

19   September 2, 2008, and whether that facility had Spanish-language legal materials.  (See

20   Pet'r Decl. ¶ 9.)

21

22   [1]  Petitioner has cited case law wherein parties asserted that law libraries at the Salinas
     Valley State Prison and the Substance Abuse Treatment Facility in Corcoran lacked
23   Spanish language legal materials or copies of the AEDPA in Spanish.  This caselaw is
     inapposite because the time frames accounted for in these cases do not overlap with
24   Petitioner's incarceration.  See Martinez v. Evans, No. CIV S–07–0999 FCD GGH P, 2009
     WL 1845092, at *4 (E.D. Cal. June 26, 2009) (unpub.) (parties stipulated there were no
25   Spanish language legal materials and no copy of AEDPA in Spanish at the Salinas Valley
     State Prison law library during 2003 and 2004); Marroquin v. Harman, No. CV 12–8667–
26   DDP (RBB), 2013 WL 6817649, at *7 (C.D. Cal. Dec. 20, 2013) (unpub.) ("Petitioner also
     has adduced evidence suggesting the prison library at the Substance Abuse Treatment
27   Facility ('SATF') in Corcoran may have lacked any Spanish language materials" from
     2003 to 2005.).  These cases do not provide support for Petitioner's claim because they do
28   not prove that the facilities lacked Spanish-language legal materials during the time
     Petitioner was incarcerated at those facilities, between 2008 and 2014.

8

1    Petitioner has also failed to demonstrate that he was diligent in his efforts to procure

2    Spanish-language legal materials or translation services.  In <u>Mendoza</u>, the Ninth Circuit

3    held that the inability to understand English "'in and of itself, does not automatically'

4    justify equitable tolling."  449 F.3d at 1070–71 (quoting <u>Cobas v. Burgess</u>, 306 F.3d 441,

5    444 (6th Cir. 2002)).  Even in his declaration, Petitioner has not described any instances

6    where he attempted to obtain Spanish-language legal materials and was unable to access

7    such materials.  <u>See</u> <u>Torres v. Dexter</u>, 662 F. Supp. 2d 1156, 1160–61 (C.D. Cal. 2009)

8    (explaining that the petitioner failed to make a showing that he was diligent in his efforts to

9    obtain Spanish-language legal materials while incarcerated).

10    Lastly, Petitioner has failed to account for the time most critical to his equitable

11    tolling claim—from the denial of his first state habeas petition on September 26, 2007, to

12    the expiration of his AEDPA deadline on September 18, 2008.  (Pet'r Decl. ¶ 9(a)–(w);

13    Opp'n Mot. Dismiss at 9–11); <u>see</u> <u>Gibbs</u>, 767 F.3d at 884–85 (explaining that the

14    petitioner who was 193 days late in filing his federal habeas petition had to establish that

15    he was entitled to equitable tolling "at least" for 193 days prior to the AEDPA deadline).

16    Because reinitiation of the limitations period is not permitted, incidents that occurred after

17    the expiration of the limitations deadline cannot be used to justify equitable tolling for the

18    period before the expiration of the deadline.  <u>See</u> <u>Ferguson</u>, 321 F.3d at 823 (holding that

19    AEDPA does not permit reinitiation of the limitations period).  As such, demonstrations

20    that Petitioner lacked access to legal materials in Spanish after the expiration of his

21    AEDPA limitations deadline on September 18, 2008, are insufficient.

22    Petitioner has failed to demonstrate that he lacked access to Spanish-language legal

23    materials or translation services and that he was diligent in his efforts to procure such

24    materials and services.  He has also failed to account for the period of time prior to the

25    expiration of the AEDPA deadline.  Thus, Petitioner is not entitled to equitable tolling on

26    the ground of lack of access to Spanish-language legal materials.

27

28

9

**3.      Access to Property and Legal Papers**

1

2      Petitioner next contends that he is entitled to equitable tolling because he lacked

3    access to his personal legal materials throughout his incarceration when he was moved to

4    different facilities and placed in administrative segregation.  (Pet'r Decl. ¶ 9(a)–(w), 11(a)–

5    (c), 13(a)–(ee).)   He is not entitled to equitable tolling on this ground, because he has

6    failed to demonstrate that he was, in fact, denied access to his legal material throughout his

7    transfers and while he was in administrative segregation.  (See Opp'n Mot. Dismiss at 11–

8    12.)  Further, Petitioner makes no argument that denial of access to his legal materials and

9    property made timely filing impossible.  (See id.)

10      The Ninth Circuit has held that equitable tolling may be justified when a prisoner

11    has been denied access to their legal files, if lack of access made timely filing impossible

12    and the petitioner pursued his or her rights diligently.  Ramirez, 571 F.3d at 998.  The

13    reasoning behind this rule is that it would be "'unrealistic to expect [a habeas petitioner] to

14    prepare and file a meaningful petition on his own within the limitations period' without

15    access to his legal file."  Espinoza-Mathews v. California, 432 F.3d 1021, 1027–28 (9th

16    Cir. 2005) (quoting Spitsyn, 345 F.3d at 801).  However, lack of access must be absolute,

17    because limited access to the prison law library is a routine part of prison life and therefore

18    not "extraordinary."  Ramirez, 571 F.3d at 998 (explaining that if "common day-to-day

19    security restrictions in prison" justified equitable tolling, the exception would "swallow the

20    rule").

21      Petitioner has failed to demonstrate that he was denied all access to his legal

22    materials during the time he was in administrative segregation.  Being placed in

23    administrative segregation does not in and of itself justify equitable tolling, because

24    placement in administrative segregation does not prove that Petitioner was denied all

25    access to his legal materials.  See Ramirez, 571 F.3d at 998 (holding that the petitioner was

26    not entitled to equitable tolling for the time he remained in administrative segregation

27    because he continued to have limited access to the law library).  Therefore, Petitioner's

28    claims that he was placed in administrative segregation, without evidence that he was

1   actively denied access to his personal legal materials, does not justify equitable tolling.

2       Though Petitioner has repeatedly stated that he was denied access to his legal

3   materials, Petitioner only offers one concrete example of a time in 2014 where Petitioner

4   requested access to his legal materials and was denied. (Pet'r Decl. ¶ 9(v), 13(a).) In

5   Espinoza-Matthews, the Ninth Circuit granted equitable tolling to a petitioner who was

6   able to demonstrate that he had repeatedly inquired about his property and was denied

7   access by prison officials. 432 F.3d at 1027–28. In contrast, Petitioner references one

8   time in 2014 where he filed an internal administrative complaint inquiring into the

9   whereabouts of his lost personal legal materials. (Pet'r Decl. ¶ 9(v), 13(a).) This one

10  complaint is insufficient evidence of diligence, especially because the inquiry occurred six

11  years past the expiration of the AEDPA deadline. (See id.); Gibbs, 767 F.3d at 884–85;

12  Ferguson, 321 F.3d at 823 (holding that AEDPA does not permit reinitiation of the

13  limitations period). Petitioner's one filing in 2014 fails to demonstrate that he was

14  sufficiently diligent after the expiration of AEDPA deadline and fails to support any claim

15  that Petitioner was diligent prior to the expiration of the AEDPA deadline on September

16  18, 2008.

17      Regardless, even if equitable tolling were warranted for the period of time in which

18  Petitioner was placed in administrative segregation, Petitioner's federal habeas petition

19  would still be untimely. According to Petitioner's declaration, he was placed in

20  administrative segregation for forty-one days, July 23, 2008, to September 2, 2008. (Pet'r

21  Decl. ¶ 9(b).) If Petitioner were granted forty-one days of equitable tolling, his new

22  AEDPA deadline would be October 29, 2008. See Espinoza-Matthews, 432 F.3d at 1027–

23  28 (granting equitable tolling for the number of days the petitioner was denied access to

24  his personal legal materials while in administrative segregation). Even with this new

25  deadline, the petition would still be untimely because the Petitioner was next placed in

26  administrative segregation from February 15, 2010, to May 30, 2010, over a year after the

27  October 29, 2008, deadline. (See Pet'r Decl. ¶ 9(e)); Ferguson, 321 F.3d at 823.

28

1    Because Petitioner has failed to demonstrate that he was denied access to his

2    personal legal materials and was diligent in attempting to access his legal materials,

3    Petitioner's claims that he lacked access to his legal materials as a result of movement

4    between facilities and administrative segregation are insufficient to warrant equitable

5    tolling.

6    **4.    Mental Health Impairment**

7    Petitioner argues that he is entitled to equitable tolling because he experienced

8    mental health crises and suicidal episodes that impaired his ability to timely file his federal

9    habeas petition.  (Opp'n Mot. Dismiss at 12–13.)  However, under Ninth Circuit precedent,

10   Petitioner's mental health issues do not amount to the level of impairment required to

11   justify equitable tolling.

12    Mental incompetency is an extraordinary circumstance beyond the prisoner's

13   control.  Calderon v. United States, 163 F.3d 530, 541 (9th Cir. 1998), rev'd on other

14   grounds by Woodford v. Garceau, 538 U.S. 202 (2003); see also Laws v. Lamarque, 351

15   F.3d 919, 923 (2003) (holding that mental incompetency justifies equitable tolling).

16   Because competency standards vary "in relation to the task the defendant is expected to

17   perform," competency in an AEDPA equitable tolling case must be determined by a

18   petitioner's ability to comply with the AEDPA deadline.  Bills, 628 F.3d at 1099–100.

19   Equitable tolling due to mental impairment is permissible if: (1) A petitioner can show that

20   his mental impairment was an "'extraordinary circumstance' beyond his control . . .  by

21   demonstrating the impairment was so severe that either (a) [the] petitioner was unable

22   rationally or factually to personally understand the need to timely file, or (b) [the]

23   petitioner's mental state rendered him unable personally to prepare a habeas petition . . . ;"

24   and (2) the petitioner was diligent in pursuing his claims.  Id. (quoting Holland, 560 U.S. at

25   649).  The Court must also consider whether a petitioner's mental health impairment

26   prevented him from diligently seeking assistance.  Id. at 1101.

27   Petitioner's claim of mental impairment fails to meet the first prong of the Bills test

28   because Petitioner has failed to show that his mental impairment was sufficiently severe to

12

1    render him unable to understand the need to timely file, or that his mental impairment

2    made timely filing impossible.  (See Opp'n Mot. Dismiss at 12–13); Bills, 628 F.3d at

3    1099–100.  Petitioner claims that his thinking was "clouded" by his depression, which

4    made it "difficult to focus on pursuing his legal challenge," and that he attempted to

5    commit suicide in 2015 and 2016.  (Opp'n Mot. Dismiss at 12–13; see Pet'r Decl. ¶ 9(a).)

6    However, Petitioner does not claim that he was unable to understand the need to file a

7    timely petition and has not explained why his depression was an extraordinary

8    circumstance that prevented him from filing a timely petition.  (See Opp'n Mot. Dismiss at

9    12–13.)  His medical records indicate that though he was diagnosed with major depressive

10   disorder, throughout this time his cognition remained within "normal limits" and his

11   thinking remained "linear" and "logical."  (Reply to Opp'n Mot. Dismiss Ex. 1 at

12   AGO021–48.)  Based on his undisputed medical records, Petitioner's mental impairment

13   was not sufficiently severe and therefore fails the first prong of the Bills test.  Cf. Forbess

14   v. Franke, 749 F.3d 837, 840–41 (9th Cir. 2014) (finding that petitioner's mental

15   impairment was sufficiently severe because his delusions that he was an undercover FBI

16   agent and that his trial was a "sham" rendered him incapable of understanding the need to

17   file a timely petition).

18        Petitioner also fails to meet the second prong of the Bills test because he has not

19   shown that he was diligent in preparing his federal habeas petition during the relevant time

20   period or that his mental impairment was the "but-for" cause of any delay.  See Bills, 628

21   F.3d at 1100 ("Thus, a petitioner's mental impairment might justify equitable tolling if it

22   interferes with the ability to understand the need for assistance, the ability to secure it, or

23   the ability to cooperate with or monitor assistance the petitioner does secure."); (Opp'n

24   Mot. Dismiss at 12–13.)  Though Petitioner's suicide attempts in 2015 and 2016, (Pet'r

25   Decl. ¶¶ 13(a)–13(ee)), may have been sufficiently severe as to hinder his ability to file a

26   federal habeas petition in a timely manner, Petitioner has not met the burden of

27   demonstrating that for the duration of the relevant time period he experienced mental

28   health impairments that inhibited him from making a timely filing.  Petitioner is not

13

United States District Court
Northern District of California

1    entitled to equitable tolling for mental health impairments that occurred six and a half

2    years after the AEDPA deadline had passed.  See Gibbs, 767 F.3d at 884–85.

3           Petitioner is therefore not entitled to equitable tolling on the ground of mental

4    impairment because his mental impairment does not amount to incompetence for purposes

5    of adhering to the AEDPA filing deadline.

6           **5.     Diligence**

7           Petitioner claims that he has been diligent in pursuing his rights, as evidenced by

8    the briefs he filed in the California Supreme Court in 2009 and 2011, and the eight state

9    habeas petitions he filed in the California Supreme Court and the Santa Clara County

10   Superior Court after he received the denial of his first state habeas petition in 2014.

11   (Opp'n Mot. Dismiss at 7; First Am. Pet. Ex. H, J1, J2, L1, L2, N.)

12          Though Petitioner's filings demonstrate some diligence, they are insufficient to

13   account for the amount of time necessary to make Petitioner's filing timely.  See Gibbs,

14   767 F.3d at 884–85 (explaining that a petitioner requesting equitable tolling must account

15   for time prior to the expiration of the AEDPA deadline).  The brief Petitioner filed in

16   2009—his first filing after his first state habeas petition was denied—was after the

17   AEDPA deadline had already passed, and therefore did not reinitiate the limitations period.

18   See Ferguson, 321 F.3d at 823; (Opp'n Mot. Dismiss at footnote 1).  As previously

19   addressed, Petitioner was the sole individual responsible for receiving the superior court's

20   denial of his habeas petition, and it is unclear why he was not made aware of the denial

21   prior to 2014.  (Pet'r Decl. ¶ 5.)  The absence of an explanation significantly weakens

22   Petitioner's argument that he was diligent in his efforts to file a timely petition, because it

23   appears that Petitioner failed to exercise diligence in remaining informed about the status

24   of his state habeas petition.  Further, Petitioner's ten-year delay in filing his federal habeas

25   petition connotes a lack of diligence on Petitioner's part.  See Torres, 662 F. Supp. at

26   1160–61 (expressing skepticism that petitioner was diligent in obtaining Spanish-language

27   legal materials or translation services given the eleven-year delay in filing his federal

28   habeas petition).

14

**6.  Holistic Review**

Finally, Petitioner argues that the combination of the circumstances addressed above entitle him to equitable tolling.  (Opp'n Mot. Dismiss at 7.)  Petitioners may be entitled to equitable tolling if multiple circumstances "<u>together</u> made a timely filing impossible."  <u>Ramirez</u>, 571 F.3d at 1000.  However, Petitioner has failed to meet the diligence prong for every claim, has failed to account for the relevant time period before the expiration of the AEDPA deadline (September 2007 to September 2008), and has failed to explain how all the circumstances alleged worked together to make a timely filing impossible.  (<u>See</u> <u>generally</u> Opp'n Mot. Dismiss.)

Petitioner was the sole individual responsible for diligently pursuing his claims, and he has failed to offer sufficient evidence pointing to specific instances where he was actively pursuing his claims and was denied access to Spanish-language legal materials and his own legal materials despite his attempts to access those materials.  (<u>See</u> Pet'r Decl. ¶¶ 9(a)–(w), 11(a)–(c), 13(a)–(ee).)  Petitioner's most convincing evidence—his 2009 and 2011 filings, his state-post-conviction petitions between 2014 and 2015, and his 2014 request to access his lost legal file—all occurred after the passage of the AEDPA filing deadline.  (<u>See</u> Pet'r Decl. ¶ 9(v); First Am. Pet. Ex. H, J1, J2, L1, L2, N; Opp'n Mot. Dismiss at footnote 1.)  As previously discussed, incidents occurring after the passage of the AEDPA deadline are irrelevant unless the time prior to the passage of the deadline is accounted for.  <u>See</u> <u>Gibbs</u>, 767 F.3d at 884–85.  Here, the prior passage of time is not accounted for.

In the absence of sufficient diligence and an explanation of why and how the combination of circumstances made timely filing impossible, Petitioner's circumstances do not justify equitable tolling even when considered holistically.

United States District Court
Northern District of California

IV.     CONCLUSION

Petitioner has failed to demonstrate that he is entitled to equitable tolling on the grounds that he was abandoned by his attorney, lacked access to Spanish-language legal materials, lacked access to his own legal materials, was mentally incompetent for the purposes of complying with AEDPA, or diligently pursued his application.  Having considered each of Petitioner's arguments individually and holistically, the Court finds that Petitioner's arguments are insufficient because they fail to meet the threshold for equitable tolling and fail to account for key portions of time in the almost seven-year gap between the denial of his first state habeas petition and the filing of his second state habeas petition.  Because Petitioner's request is untimely and Petitioner has not raised claims that warrant an exception to AEDPA's limitation period, there is no need to address whether Petitioner's claims are exhausted.  See Mena v. Long, 813 F.3d 907, 909–10 (9th Cir. 2016) (explaining that AEDPA's statute of limitations bars untimely exhausted claims); 28 U.S.C. § 2244(d)(1) (exceptions to the AEDPA limitations period include if the claim was newly recognized by the Supreme Court or could not have been discovered earlier); Lee v. Lampert, 653 F.3d 929, 932–33 (9th Cir. 2011) (holding that credible claims of actual innocence constitute an "equitable exception to AEDPA's limitations period").

For the foregoing reasons, the Respondent's Motion to Dismiss is GRANTED.


**IT IS SO ORDERED**.

Dated: February 28, 2019

_____
CHARLES R. BREYER
United States District Judge